[File No. 6955]

DR. A. FLATH, Appellant, v. E. E. ELEFSON, R. S. Ashley and Sam Uran, as members of the Board of County Commissioners of Mountrail County, North Dakota, and Mountrail County, a political subdivision of the State of North Dakota, Respondents.

(19 NW2d 571)

Opinion filed July. 28, 1945

*R. E. Swendseid,* for appellant.

*F. F. Wyckoff,* for respondents.

CHRISTIANSON, Ch. J. This is a proceeding against the county commissioners of Mountrail County to require them to cancel certain taxes against a tract of land. The material facts are substantially as follows: One Anna O. Schott was the owner of a tract of land in Mountrail County. She failed to pay the second installment of the 1932

taxes against such land. Mountrail County became the purchaser at the tax sale held on December 12, 1933, and certificate of sale was issued to it. The land was assessed and taxes laid against it in subsequent years, and the taxes not being paid, subsequent tax sales certificates were issued to the county pursuant to the provisions of the law so requiring. Laws 1931, c 298, § 2. On May 11, 1940 the county auditor of Mountrail County issued a notice of expiration of the period of redemption. No redemption was made, and on October 1, 1940 tax deed was issued to the county. On December 27, 1940 the county sold the land pursuant to law to David Enander and Alice Enander on contract for deed. They made payments under the contract aggregating in all some $150.00. On or about August 7, 1942 the said Anna O. Schott commenced an action in the district court of Mountrail County to quiet title to the land. In such action she alleged, and upon the trial, and later on appeal in this court, she contended that she was the owner in fee, and that the tax deed issued to Mountrail County was a nullity for the reason that notice of the time of expiration of the period of redemption had not been served as required by law. The trial court sustained the contention of the plaintiff in that action and adjudged that the tax deed issued to the county was void for want of legal notice of the time of expiration of the period of redemption. Such judgment was affirmed by this court. Schott v Enander, ante, 352, 15 NW2d 303.

After such action had been brought by Anna O. Schott and while the same was pending in the district court, and before it had been brought on for trial, the said Anna O. Schott executed and delivered to the above named appellant, Flath, a deed whereby she conveyed to him all her interest in and title to the tract of land in question. After the decision in Schott v. Enander, supra, had been rendered by this court and the remittitur in the case had been returned to the district court, the said Flath presented to the Board of County Commissioners of Mountrail County a deed executed by the said Anna O. Schott on May 2, 1943 to said Flath as grantee, together with an application by the said Flath as owner of the land by virtue of said deed wherein he demanded that all taxes assessed and levied against the premises described in the deed subsequent to the year 1932 up to and including the taxes

for the year 1940 be cancelled and that in any event he be required to pay only the balance remaining unpaid on the contract for deed given by the county to David Enander and Alice Enander. The Board of County Commissioners denied the application and refused to cancel the taxes. The controversy was presented to the district court; that court sustained the action of the county commissioners, and the matter comes before this court on appeal from the judgment of the district court.

Appellant contends:—

1. That under the provisions of Chapter 235, Laws 1939, it was obligatory upon the county commissioners to cancel all taxes against the land for which tax deed had been issued; that upon the issuance of tax deed to the county, all taxes against the land ceased to have any validity and that it was the duty of the county commissioners to cancel the taxes, and this wholly without regard to whether the tax deed was valid or invalid.

2. That "when Mountrail County took its tax deed to the land in question in 1940, it acquired title free from the 1932 to 1940 taxes inclusive, and when the land was sold to the Enanders, they became the equitable owners and the "county held its legal title in trust as security for the purchase price," and when the county's tax deed was adjudged to be void, and title quieted in Schott as against the Enanders by the final decision in Schott v. Enander, ante, 352, 15 NW2d 303, supra, the Enanders became "trustees for the benefit of Schott of such rights as they had under the contract for deed, which included the right to complete the payments due on the contract for deed, and demand tax title from Mountrail County."

3. That the taxes for the several years in question were laid upon a valuation greatly in excess of the just and true value of the land in money, and that consequently, in any event, the county commissioners should have abated the amount of the taxes based upon such excessive valuation, and required payment only of the amount properly chargeable for taxes upon the just and true value of the land in money, during the years in question. Chapter 235, Laws 1939, provides: "Upon issuance of tax deed to the county, such county acquires title to the property included in the tax deed free from all incumbrances. *Upon obtain-*

*ing tax deed to any real estate, the board of county commissioners shall, by general resolution, provide for the cancellation of all general taxes and all special assessment taxes of record which are then due or delinquent except such as were included in the notice of expiration of period of redemption.* The assessment made on any real estate acquired by the county through tax deed in the year in which the county takes title, shall be abated and cancelled. So long as the county retains title to any real estate acquired by tax deed, such real estate shall be exempt from all general property taxes and all special assessment taxes."

In 1941 the Legislative Assembly repealed Chapter 235, Laws 1939, and enacted in lieu of the above quoted italicized provision, a provision reading as follows: "After any real estate has been sold for cash or upon contract for deed, which has been fully performed and a deed has been issued and delivered to the purchaser thereof, the County Commissioners shall, by general resolution, provide for the cancellation of all general taxes, hail indemnity taxes, and special assessments remaining of record, against the premises sold at the date of such sale," Laws 1941, c 286, § 20. This provision became effective March 15, 1941 and has been retained and is part of the present law. Laws 1943, c 121, § 3, N. D. Rev. Code 1943, § 57–2821.

No procedural questions have been raised, and the only ultimate question involved and presented for determination on this appeal is whether it was the duty of the Board of County Commissioners of Mountrail County to cancel the taxes in accordance with the application of the appellant, Flath. The several contentions of the appellant are all directed toward this question, and are predicated upon the propositions that under the law, it was the duty of the Board of County Commissioners to cancel the taxes.

Appellant's contention that it was the duty of the Board of County Commissioners to cancel the taxes is predicated upon that portion of Chapter 235, Laws 1939 which we have italicized. In his argument appellant ignores the sentence immediately preceding the italicized portion, and he also ignores the legislative enactment of 1941—the provisions of which have been in force since March 15, 1941. The application to cancel the taxes involved here was presented to the Board of County Commissioners in September, 1944.

In our opinion it is immaterial whether in passing upon the application for cancellation the county commissioners were governed by Chapter 235, Laws 1939, or by Chapter 286, Laws 1941.

Under the 1941 enactment the county commissioners are not required or authorized to cancel taxes until the county has been paid the full purchase price and has issued and delivered deed to the purchaser. In this case that concededly had not taken place.

The language of the 1939 statute clearly indicates that the Legislature had in mind a valid tax deed—a tax deed under which the county "acquires *title* to the land included in the tax deed," and which would clothe the county with a new and complete title in the land, and which would bar and extinguish all prior titles and incumbrances of private persons whether of record or otherwise. Baird v. Stubbins, 58 ND 351, 226 NW 529, 65 ALR 1009. The first expression of the lawmakers was: "Upon the issuance of tax deed to the county, such county acquires title to the property included in the tax deed free from all encumbrances." The county could acquire title only if there were a valid tax deed. It is upon the existence of this fact, that is, the issuance of a tax deed which would vest in the county the "title to the property included in the tax deed" that the subsequent provision for cancellation of taxes by the county commissioners is predicated.

In this case we are not dealing with a situation where a purchaser from the county has fully performed the contract and the county has issued and delivered a deed to such purchaser. Nor are we dealing with a case where a tax deed has been issued which is presumptively valid. In this case we are dealing with a situation where the original owner of the land brought action, challenging the validity of the tax deed issued to the county, and in such action obtained a judicial determination that the tax deed to the county is null and void, and where the successor in interest of the plaintiff in such action asks that the taxes be cancelled. While the county was not a party to the action brought by Anna O. Schott, the application to cancel the taxes is, nevertheless, predicated upon the result of that decision; and as a result of the facts established and the rules of law announced by that decision, it is clear the county did not acquire title to the property at all, and the lien of the tax and the tax certificate upon which the deed was based remains in effect the

same as if no tax deed had been issued; and there is no reason why the liens which the county held for taxes for other years should be deemed to be merged in the invalid tax deed, or to be abrogated as a result of the abortive tax deed proceedings.

It is undisputed that Anna O. Schott, the owner of the land, paid no taxes on the land in question subsequent to the first installment of the 1932 tax. The application of the petitioner to cancel the taxes is based upon the fact that Schott transferred all her interest, right and title to the petitioner by quitclaim deed given on May 2, 1943. This being so, Anna O. Schott was not the owner of the land at the time the action to determine adverse claims was tried and judgment entered therein. She had no interest in the land. She had already transferred all her interest to the appellant, Flath, by quitclaim deed. She was under no obligation by virtue of the instrument which she had given to defend her title and had no responsibility or liability on account of any judgment that might be rendered in the action. The laws of this state grant to an owner of land certain rights when such land has been sold for taxes, including the right to redeem and the right to repurchase the property as "a preferred purchaser without profit to the county," (State v. Morton County, 56 ND 712, 715, 219 NW 223, 224; Rosenstein v. Williams County, ante, 363, 15 NW2d 378, 380); but they do not grant to an owner of land who has failed to pay his taxes and who fails to avail himself of the rights to redeem and repurchase, any right as a beneficiary of any contract that the county may have made for the sale of the premises to some other purchaser. There was no contract between Mountrail County and Anna O. Schott or between the county and her grantee, the appellant Flath. The contract was between the county and the Enanders. The county was not made a party to the action brought by Anna O. Schott challenging the validity of the tax deed to the county. That deed formed the basis of the contract for deed which the county had made with the Enanders. She asserted that the deed was a nullity and, consequently, that the county was without authority to convey any title to a purchaser at all. She obtained a judicial decision sustaining her contention. It is upon the condition created by that decision that her grantee, in a large measure, predicates the right to have cancelled the taxes against the land subsequent

to those on which the tax deed is based. But according to that decision, the tax deed issued to the county was a mere nullity, the county acquired no title, and the deed did not affect or cut off any claims, liens or incumbrances of any parties. Therefore, so far as the owner of the land is concerned, the liens of the county for taxes for the several years remain precisely the same as though no tax deed had been issued. What the respective rights and obligations of the county and the Enanders are under the contract between them is not material here.

The claim that in any event a certain amount of the taxes should have been abated because the taxes were levied upon an excessive valuation is predicated almost wholly upon the fact that in appraising the land for sale after the county had obtained tax deed, the county commissioners fixed a valuation considerably lower than the assessed valuation; and it is contended that consequently the county commissioners should have reduced the taxes to what they would have been if the taxes had been laid upon such lower valuation. The contention, while ingenious, is not well founded. Our laws provide for the method and procedure of determining the value of lands for taxation. They also provide for the valuation of lands to which the county acquires tax title, for the purposes of sale of such lands. The two methods are wholly different. One does not necessarily control the other. It is undisputed that the land in question here was assessed by the assessor and that such assessment was equalized by the several boards of review in the manner provided by law. There is no claim that Anna O. Schott, the then owner, or anyone on her behalf, or any other person, made any objection to the valuation fixed by the various assessing and reviewing officers. The fact that the Board of County Commissioners fixed a valuation upon the land as a basis for sale different from that fixed by the assessing officers does not operate to substitute the valuation so fixed for the former valuation that was made for purposes of taxation. The record on this appeal discloses no valid reason for interfering with the judgment of the district court. Such judgment is affirmed.

MORRIS, BURKE, NUESSLE and BURR, JJ., concur.